IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>**KWAME KHALIL BROWN,**<br>a/k/a "Foogiano" | Criminal No. 6:21-cr-00753-DCC<br><br>**Government's Response to Defendant's Waiver of Rights Under the IADA** |

Defendant Kwame Khalil Brown, a/k/a "Foogiano," has waived his rights under the Interstate Agreement on Detainers Act (IADA), indicating a request to return to the custody of the Georgia Department of Corrections (GDOC), where, before being taken into federal custody, he was serving a sentence with a maximum possible release date of March 17, 2026. ECF No. 25; *see also* Georgia Department of Corrections, Find an Offender, *available at:* http://www.dcor.state.ga.us/GDC/Offender/Query. Defendant hopes to facilitate this transfer by waiving his rights under the IADA, specifically the anti-shuttling provision codified in 18 U.S.C. app. 2, § 2, art. IV(e). The IADA does not confer upon Defendant an affirmative right to remain in state custody. Due to efficiency concerns that would arise from Defendant's return to the GDOC, the government respectfully opposes Defendant's waiver and any motion to return to state custody. The government's position may be different if Defendant was willing to waive his rights under both the IADA and the Speedy Trial Act of 1974 (18 U.S.C. § 3161).

BACKGROUND

On November 9, 2021, a federal grand jury charged Defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) for conduct stemming from an incident that occurred on or about July 5, 2020. ECF No. 7. When charged, Defendant was an inmate at the GDOC. On December 13, 2021, Defendant

appeared before the Court to be arraigned. ECF No. 21. At the arraignment hearing, Defendant expressed his desire to return to state custody and waive his rights under the IADA. ECF Nos. 21, 25. The Court ordered the government to file a response to Defendant's motion to return to state custody by December 28, 2021. ECF No. 26.

DISCUSSION

A prisoner has no constitutional right to confinement in any particular place. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("[T]he Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). When an inmate in state custody is charged federally, the IADA carves out a statutory right not to be returned to the sending state until an expeditious resolution of the case in the receiving state. The IADA, however, does not confer a reciprocal right to return to the sending state's custody. Thus, this Court has the authority to determine where Defendant is to be detained prior to trial.

1. **The IADA does not confer a "right" to return to the sending state.**

Both in its stated intent and practical effect, the IADA carves out a statutory right not to be returned to the sending state (Georgia) prior to the resolution of a case in the receiving state (federal government). The IADA is an agreement between the States, the United States, and the District of Columbia to "establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000). "As a 'congressionally sanctioned interstate compact' within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IADA is subject to federal construction." *Id*. (quoting *Carchman v. Nash*, 473 U.S. 716, 719 (1985); *Cuyler v. Adams*, 449 U.S. 433, 442 (1981)). Its purpose is "to encourage the

expeditious and orderly disposition of . . . any and all detainers based on untried indictments." 18 U.S.C. app. 2, § 2, art I.

As it pertains to prisoners sent from state custody to face federal charges, the two main provisions of the IADA are Article III (speedy trial) and Article IV(e) (anti-shuttling). Article III gives life to the purpose articulated in Article I by placing a limit on the tollable period within which the receiving state must try a prisoner on any outstanding indictments, informations, or complaints. Under Article IV(e), returning a prisoner to the sending state prior to trial in the receiving state warrants dismissal with prejudice, or without prejudice under 18 U.S.C. app. 2, § 9(1), where the federal government is the receiving state.[1]

The IADA's "guarantees are of statutory rather than constitutional proportions." *United States v. Odom*, 674 F.2d 228, 231 (4th Cir. 1982). The rights conferred by the IADA need not be waived knowingly, as "most courts of appeals that have considered the question under the IAD[A] have concluded that a defendant need not know his or her rights under the statute in order to waive its protections." *United States v. Lawson*, 746 F.2d 835, 837–38 (2d Cir. 1984) (citing *United States v. Odom*, 674 F.2d 228, 230 (4th Cir. 1982)_.

A defendant may waive his rights under the anti-shuttling provision, and the proper mechanism for such a waiver is a motion to return to the sending state. *United States v. Kimble*, 2009 WL 2761318 (N.D. W. Va. Aug. 28, 2009). However, the ability to waive a right does not necessarily entitle a defendant to the result of his desired waiver. The First Circuit underscored this point by characterizing the anti-shuttling provision as a "right to remain in the custody of the

---

[1] To determine whether a violation of the anti-shuttling provision should result in dismissal with or without prejudice, the Court can consider: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of reprosecution on the administration of the agreement on detainers and on the administration of justice. 18 U.S.C. app. 2, § 9(1).

United States until trial." *United States v. Rossetti*, 768 F.2d 12, 19 (1st Cir. 1985).

Undersigned counsel is not aware of a case that squarely addresses whether a defendant is entitled to return to the sending state's custody. However, in *United States v. Knight*, the Eleventh Circuit addressed a comparable scenario. 562 F.3d 1314 (11th Cir. 2009). In *Knight*, the district court dismissed Knight's first indictment without prejudice for a Speedy Trial violation unrelated to the IADA. *Id*. at 1320–21. Knight unsuccessfully argued on appeal that the second indictment should have been dismissed because he was not returned to state custody between his first and second indictments.[2] *Id.* Finding fault with Knight's attempt to equate this failure to be returned to a pre-indictment due process delay, the court found "Knight cannot establish that his retention in federal custody violated his due process rights." *Id*. at 1325. The court specifically noted that Knight could not (1) establish actual prejudice to his defense, (2) show that the United States acted to gain a tactical advantage, or (3) escape that he "was still subject to a second indictment and another transfer to federal custody even if he had been returned first to state custody." *Id*. Knight's due process argument failed because retention in federal custody under his circumstances was likely to cause less, not more, pretrial delay. *Id*. The IADA simply does not provide prisoners with a mechanism to demand housing in a specific place when caught between two jurisdictions.

2. **The Court has discretion to determine the place of Defendant's pretrial confinement.**

It is the Court, not a defendant, who determines the location of pretrial confinement. Title 18, U.S.C. app. 2, § 9(2), permits a judge to return a defendant to the sending state. "Under the IADA, the United States may return a prisoner in federal custody to the custody of the sending

---

[2] It seems that Knight hoped a return to state custody would trigger an IADA dismissal between indictments: "Knight argues that had he been returned to state custody, he would have been entitled to dismissal of his indictment with prejudice. Knight argues that the United States deliberately kept him in federal custody to gain a tactical advantage." *Id.* at 1324.

state before trial pursuant to court order if the prisoner and the United States are given 'reasonable notice . . . and an opportunity for a hearing." *United States v. Macomber*, 717 F.3d 607, 610 n.4 (8th Cir. 2013) (quoting 18 U.S.C. app. 2, § 9(2)). This comports with judicial discretion in a similar scenario—the judicial discretion vested in the Bail Reform Act. Title 18, United States Code, Section 3141(a) gives "judicial officers" the authority to make determinations regarding bail in all stages of a criminal case, up to and including the trial stage, as well as temporary detention under § 3142(d). Courts have wide latitude to set the contents and course of a defendant's detention under § 3142(i). It follows that the Court may also refuse to return a defendant to the sending state, after considering both relevant detention factors and the IADA's anti-shuttling provision.

3. **The case at bar**

After conferring with the United States Marshals Service, it is undersigned counsel's understanding that the GDOC does not transport prisoners for federal court appearances and would not transport Defendant to federal court in South Carolina for appearances in this case. Thus, it appears as if transport to and from the GDOC for federal court appearances would take approximately three weeks due to the distance and logistics involved. During such transports, Defendant would spend days in multiple holdover jails awaiting the next leg of his transport trip. This would potentially interfere with Defendant's ability to confer with his lawyer and review discovery under the Court's Standing Order Governing Discovery.

The government's primary concern with Defendant returning to GDOC custody is due to the time and transportation issues, which are exacerbated by COVID. If Defendant is willing to waive his rights under both the IADA and the Speedy Trial Act (18 U.S.C. § 3161), the government would reconsider its position.

        Respectfully submitted,

        COREY F. ELLIS
        UNITED STATES ATTORNEY

        *s/ Justin W. Holloway*
        Justin W. Holloway
        Assistant United States Attorney
        Federal ID # 11684

December 27, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>**KWAME KHALIL BROWN,**<br>a/k/a "Foogiano" | Criminal No. 6:21-cr-00753-DCC<br><br>**Government's Response to Defendant's Waiver of Rights Under the IADA** |

## CERTIFICATE OF SERVICE

As attorney of record, I hereby certify that I have caused an employee of the United States Attorney's Office to serve on December 27, 2021, a true and correct copy of the Government's Response to Defendant's Waiver of Rights under the IADA via the Court's e-noticing system, but if that means fails, then by mailing a copy through the United States mail, postage paid, to the attorney of record listed in this matter.

*s/ Justin W. Holloway*
Justin W. Holloway
Assistant United States Attorney
Federal ID # 11684

December 27, 2021